UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAISON D. NUNEZ-VALLADARES,

Petitioner,

v. Case No.: 2:26-cv-02323-SPC-KRH

WARDEN OF GLADES COUNTY DETENTION CENTER *et al.*,

Respondents,
_____________________________________/

**OPINION AND ORDER**

Before the Court are Daison D. Nunez-Valladares's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 6), and Nunez-Valladares's reply (Doc. 7).

Nunez-Valladares is a native and citizen of Venezuela who entered the United States on June 18, 2023. On December 29, 2025, local police arrested Nunez-Valladares during a traffic stop and handed him over to Immigration and Customs Enforcement. He sought habeas relief from this Court in *Nunez-Valladares v. Noem*, M.D. Fla. Case No. 2:26-cv-794-SPC-NPM. The Court partially granted the petition and ordered the respondents to either bring Nunez-Valladares before an immigration judge for a bond hearing or release him from custody. On April 9, 2026, Immigration Judge Stuart A. Siegal denied release on bond, finding Nunez-Valladares "ha[d] NOT met his burden

of proof in establishing that he is not a DTC/Public Safety Risk based on 2024 arrest for Domestic Violence/Family member and 2025 Fraudulent misuse of a tag in Florida[.]" (Doc. 1-2 at 7). Judge Siegel denied bond again on June 21, 2026, because he found no material change in circumstances.

On July 9, 2026, Immigration Judge Jennifer Mazza ordered Nunez-Valladares removed to Venezuela. Nunez-Valladares appealed to the Board of Immigration Appeals (BIA), so the removal order is not administratively final.

Nunez-Valladares argues his continued, prolonged detention violates the Due Process Clause of the Fifth Amendment. In response, the government argues a subsection of the Immigration and Nationality Act that strips the Court of jurisdiction to consider this case:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). § 1226(e) only partially applies here. Some of Nunez-Valladares's habeas claims could be construed as challenges to Judge Siegel's discretionary bond decisions. The Court lacks jurisdiction to consider such claims. But Nunez-Valladares also raises a bona fide due process claim challenging the constitutionality of his current, prolonged detention. § 1226(e) does not strip the Court of jurisdiction to consider bona fide constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510 (2003).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Immigration detention is civil in nature, and civil detention violates the Fifth Amendment unless "a special justification…outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Nunez-Valladares's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. While there is no hard limit

on how long a noncitizen can be detained under § 1226(a), the longer the duration of Nunez-Valladares's detention, the greater the deprivation of his right to liberty. In the context of post-removal-order detention under § 1231, the Supreme Court limited the presumptively reasonable period of detention to six months. *Id.* at 701. The Court noted "that Congress previously doubted the constitutionality of detention for more than six months." *Id.*

As the Supreme Court recognized in *Zadvydas*, facts that justify a brief period of detention might not justify a longer period of detention. *See id.* ("as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"). The fact that Nunez-Valladares's detention now exceeds seven months and could continue indefinitely—the evidence shows the BIA received a notice of appeal but has not yet set a briefing schedule—raises constitutional concerns. But under the status quo, Nunez-Valladares has no opportunity to address them. The Court sees value in additional safeguards, like a bond hearing in which the government bears the burden of proof. *See Velasco Lopez v. Decker*, 978 F.3d 842, 853 (2d Cir. 2020) (comparing the ease with which the government can gather evidence with the hurdles faced by a noncitizen in prolonged detention).

Third, the government has not established any legitimate interest in continuing to detain Nunez-Valladares without presenting a justification. Remember: Judge Siegel put the burden on Nunez-Valladares to prove he is

not a flight risk or danger to the community. A bond hearing where the government bears the burden of proof will preserve the two goals of immigration detention—to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community—while accounting for the government's interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854.

The Court will thus order the respondents to either bring Nunez-Valladares before an immigration judge for another bond hearing within ten days or release him under reasonable conditions of supervision while his removal proceeding is pending. To satisfy this Order, the hearing must include—and the resulting order must reflect—consideration of evidence properly submitted by the petitioner and the factors announced in *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), and the government must bear the burden of proof to justify continued detention. If the respondents are unable to ensure Nunez-Valladares receives a bond hearing that complies with this Order within ten days, they must release him, but they may impose reasonable terms of supervision.

Accordingly, it is hereby

**ORDERED**:

Daison D. Nunez-Valladares's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

(1) Within **ten days** of this Opinion and Order, the respondents shall either (1) bring Nunez-Valladares for an individualized bond hearing before an immigration judge or (2) release Nunez-Valladares under reasonable conditions of supervision. If the respondents release Nunez-Valladares, they must facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

(2) The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on August 24, 2026.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: FTMP-1
Copies: All Parties or Record